**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

---

**Tammy LaBorde,**

Plaintiff,

**v.**

**State of Colorado, Department of Corrections,**

**Rick Raemisch, Department of Corrections Executive Director,**
in his official capacity, and

**Michelle Nelson, Department of Corrections Clinical Services**
**Assistant Director,**
in her official capacity,

Defendants.

---

## COMPLAINT

---

COMES NOW Plaintiff, Tammy LaBorde, and for her Complaint against the Defendants,

alleges the following:

### Introduction

1.     This is a proceeding for reinstatement and damages to redress violations of Section 504

of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701, *et seq.*, against Defendant

State of Colorado, Department of Corrections ("CDOC").

2.     This action also states claims against Rick Raemisch, Executive Director of the CDOC

and Michelle Nelson, CDOC Clinical Services Assistant Director, in their official capacities, for

prospective relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et*

*seq.*, pursuant to *Ex Parte Young*.

3.      Defendants discriminated against Plaintiff on the basis of her disability, resulting in a

failure to accommodate and the unlawful termination of Plaintiff's employment.

## Jurisdiction

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 to enforce the

provisions of the ADA and Rehab Act.

## Venue

5.      The employment actions described below were committed in the State of Colorado.

6.      Venue is proper in the United States District Court for the District of Colorado under 28

U.S.C. § 1391(b).

## Exhaustion of Administrative Remedies

7.      Plaintiff exhausted her administrative remedies under the ADA.

8.      Plaintiff filed a Charge of Discrimination with the United States Equal Employment

Opportunity Commission ("EEOC") on August 7, 2017.

9.      Defendant filed a Position Statement with the EEOC in response to Plaintiff's Charge of

Discrimination.

10.     Plaintiff received a Right to Sue letter from the United States Department of Justice Civil

Rights Division on August 13, 2018.

11.     Plaintiff filed this Complaint within 90 days of her receipt of the Right to Sue letter.

12.     Plaintiff is not required to exhaust her Section 504 claims.

## Parties

13.     Tammy LaBorde is a natural person who was formerly employed by CDOC as a Health

Professional V.

14.     Rick Raemisch is the Executive Director of the CDOC, and was appointed to that position by the Governor of the State of Colorado.

15.     As the Executive Director of CDOC, Mr. Raemisch is responsible for the CDOC's employment decisions and compliance with its obligations under federal anti-discrimination law.

16.     Michelle Nelson is the Assistant Director of Clinical Services for CDOC.

17.     Ms. Nelson was Ms. LaBorde's "appointing authority" by virtue of authority granted to her from the CDOC and ultimately Mr. Raemisch.

18.     As Ms. LaBorde's appointing authority, Ms. Nelson was responsible for decisions concerning Ms. LaBorde's employment as well as CDOC's compliance with federal anti-discrimination law.

19.     CDOC receives federal funds for its operations.

20.     The 2018-19 CDOC Staff Budget Briefing states that, in Fiscal Year 2016-17, CDOC received $1,357,641 in federal funds.

### General Allegations

21.     All previous allegations are incorporated herein.

22.     On or about January 1, 2008, Ms. LaBorde began working for CDOC.

23.     On April 1, 2012, Ms. LaBorde was promoted to the position of Health Professional V.

24.     On April 7, 2016, Ms. LaBorde injured her back while on the job at CDOC.

25.     Ms. LaBorde's injury resulted in a permanent degree of impairment to her spine and musculoskeletal system.

26.     Ms. LaBorde's back injury caused her to suffer from a significant degree of incapacitation for more than six months.

27.     As a result of her injury, Ms. LaBorde struggled to bend, stand, and walk.

28.     The limitations on Ms. LaBorde's ability to bend, stand, and walk were substantial as compared to an average person.

29.     Due to her injury and medical condition, Ms. LaBorde missed work from April 8-29, 2016.

30.     Due to the substantial limitations on Ms. LaBorde's ability to bend, stand, and walk, she required one or more reasonable accommodations to perform the essential functions of her job.

31.     On April 27, 2016, Ms. LaBorde received work restrictions from her doctor.

32.     Ms. LaBorde's restrictions when she returned to work were the following:  5 pound lifting/carrying limit; no pushing, pulling, kneeling, crawling; no sitting for greater than 20 minute intervals without the ability to stand up and stretch; temporarily limited to a four hour work day.

33.     Ms. LaBorde sent those work restrictions to her supervisor and requested that she be permitted to return to work under those restrictions.

34.     Ms. LaBorde's supervisor informed Ms. LaBorde that she could return to work on April 29, 2016 working a four hour day under the medical restrictions.

35.     On April 29, 2016, Ms. LaBorde returned to work on a part-time basis with restrictions.

36.     Upon her return to work, Ms. LaBorde's CDOC supervisors refused to comply with the work restrictions put in place by her doctor.

37.     On July 5, 2016, Ms. LaBorde was medically excused from work due to her back injury and CDOC's failure to comply with her medical restrictions, and was instructed by her doctor to remain off work until she had surgery on her back.

38.     If CDOC would have complied with the medical restrictions put in place by Ms. LaBorde's doctor, she would have been able to remain at work performing her job.

39.     CDOC's failure to comply with the medical restrictions put in place by Ms. LaBorde's doctor resulted in Ms. LaBorde needing to use medical leave.

40.     On November 14, 2016, CDOC sent a letter to Ms. LaBorde to schedule an "information sharing meeting" to discuss Ms. LaBorde's "leave and status with the Department of Corrections."

41.     Enclosed with the November 14, 2016 letter was a copy of CDOC's ADA policy.

42.     The November 14, 2016 letter also invited Ms. LaBorde to call CDOC's ADA Coordinator or complete a form if she wanted to request a reasonable accommodation.

43.     As of November 14, 2016, CDOC was aware of Ms. LaBorde's possible need for a reasonable accommodation of her disability.

44.     CDOC's enclosure of its ADA policy with the November 14, 2016 letter and its suggestion that Ms. LaBorde contact the ADA coordinator about requesting a reasonable accommodation indicates that CDOC was aware of Ms. LaBorde's possible need for a reasonable accommodation of her disability.

45.     CDOC's ADA Coordinator participated in the "information sharing meeting" that took place on November 18, 2016.

46.     During the information sharing meeting, Ms. LaBorde informed CDOC that she would need a reasonable accommodation, but explained that, without information from her doctor, she was not certain what type of accommodation would be necessary.

47.     During the information meeting, Ms. LaBorde was unsure of what reasonable accommodation she would need because she did not know what her limitations or restrictions would be after her back surgery; however, Ms. LaBorde informed CDOC that her doctor could provide such information.

48.     Despite not knowing what precise accommodation she would need for her disability, Ms. LaBorde completed an accommodation request form on November 23, 2016.

49.     In the accommodation request form, Ms. LaBorde noted that she was unsure of what particular accommodation she would need because of the pending surgery.  Ms. LaBorde also included the names of the doctors from whom she was receiving treatment.

50.     On November 28, 2016, CDOC acknowledged that it received Ms. LaBorde's request for a reasonable accommodation.

51.     In the letter acknowledging Ms. LaBorde's request for a reasonable accommodation, CDOC wrote, in relevant part: "Your health care provider has not released you to return to work and the form you submitted notes that possible accommodations are unknown at this time. If you need an accommodation, when you are able to return to work, please contact me and I will be happy to assist."

52.     Despite acknowledging Ms. LaBorde's need for a reasonable accommodation, CDOC did not consult with Ms. LaBorde to ascertain the precise job-related limitations imposed by her disability and how those limitations could be overcome with a reasonable accommodation.

53.     Upon information and belief CDOC did not attempt to communicate with Ms. LaBorde's doctor to obtain information that would have assisted CDOC with determining if Ms. LaBorde could be accommodated in her position, or if other accommodations were available.

54.     Despite acknowledging Ms. LaBorde's need for a reasonable accommodation, CDOC did not identify potential accommodations and assess the effectiveness each would have in enabling Ms. LaBorde to perform the essential functions of her position.

55.     Despite acknowledging Ms. LaBorde's need for a reasonable accommodation, CDOC did not seek technical assistance from the Equal Employment Opportunity Commission, from state

or local rehabilitation agencies, or from disability constituent organizations.

56.     One potential reasonable accommodation that CDOC could have provided to Ms. LaBorde was medical leave until she recovered from back surgery.

57.     Other potential reasonable accommodations could have been identified if CDOC would have engaged in an interactive process with Ms. LaBorde.

58.     Other potential accommodations that could have been identified that would have permitted Ms. LaBorde to work until her back surgery and thereafter include modified duty, limited duty, part-time work, or work under the restrictions that had been put in place by Ms. LaBorde's doctor.

59.     On December 1, 2016, CDOC terminated Ms. LaBorde's employment effective December 5, 2016.

60.     In a letter written by Michelle Nelson, Assistant Director of Clinical Services, CDOC notified Ms. LaBorde that her employment was being terminated based on the information presented during the November 18, 2016 information sharing meeting.  The information shared in that meeting was that Ms. LaBorde would need a reasonable accommodation for her disability.

61.     CDOC did not identify any reason other than Ms. LaBorde's disability as a reason for the termination of her employment.

62.     If CDOC had engaged in the interactive process with Ms. LaBorde, reasonable accommodations, including but not limited to modified duty or additional medical leave, would have been identified.

63.     CDOC failed to provide Ms.  LaBorde with a reasonable accommodation for her disability, despite her requests.

64.     Ms. LaBorde's employment was terminated because of her disability, because she was

regarded as having a disability, or because she had a record of having a disability.

**First Cause of Action**
**(Rehabilitation Act - Failure to Accommodate)**

65.     Plaintiff realleges all prior paragraphs and incorporates them herein.

66.     Plaintiff asserts this claim against Defendant State of Colorado, Department of

Corrections ("CDOC").

67.     CDOC receives federal financial assistance.

68.     CDOC is subject to the provisions of the Rehabilitation Act of 1973.

69.     Plaintiff is a qualified individual with a disability, specifically a permanent impairment to

Ms. LaBorde's spine caused by an injury.

70.     Plaintiff's spinal impairment substantially limited major life activities, including

standing, bending, and walking.

71.     Plaintiff has a record of a disability.

72.     Plaintiff was fully qualified for her position.

73.     Plaintiff was able to perform the essential functions of her job, with or without reasonable

accommodations.

74.     Plaintiff requested a reasonable accommodation of her disability no later than November

23, 2016, when she submitted to CDOC form 1450-35A, DOC Employee Request for

Accommodation.

75.     CDOC failed to engage in the interactive process with Plaintiff regarding her requested

reasonable accommodation.

76.     CDOC failed to provide Plaintiff with a reasonable accommodation at any time after her

request for a reasonable accommodation.

77.     There were reasonable accommodations available to Plaintiff that CDOC could have

provided, including additional medical leave and modified duty, among others.

78.     CDOC's acts and omissions violated Plaintiff's rights under the Rehabilitation Act.

79.     CDOC acted with malice and with reckless disregard for Plaintiff's federally-protected

right to reasonable accommodations in the workplace.

80.     As a result of CDOC's discriminatory conduct, Plaintiff has suffered damages, including

lost wages and compensatory damages, and has incurred attorneys' fees and costs.

**Second Cause of Action**
**(Rehabilitation Act – Discriminatory Termination of Employment)**

81.     Plaintiff realleges all prior paragraphs and incorporates them herein.

82.     Plaintiff asserts this claim against CDOC.

83.     CDOC knew that Plaintiff suffered from a disability: a permanent impairment to her

spine.

84.     CDOC knew that Plaintiff's disability caused difficulties with standing, bending,

walking, and working.

85.     CDOC terminated Plaintiff's employment on December 5, 2016, because of Plaintiff's

disability.

86.     CDOC's acts and omissions violated Plaintiff's rights under the Rehabilitation Act.

87.     CDOC acted with malice and with reckless disregard for Plaintiff's federally-protected

right not to be terminated because of her status as a qualified individual with a disability.

88.     As a result of CDOC's discriminatory conduct, Plaintiff has suffered damages, including

lost wages and compensatory damages, and has incurred attorneys' fees and costs.

**Third Cause of Action**
**(ADA – Discriminatory Termination of Employment)**

89.     Plaintiff realleges all prior paragraphs and incorporates them herein.

90.     Plaintiff asserts this claim against Rick Raemisch in his official capacity as Executive

Director of CDOC and against Michelle Nelson in her official capacity as CDOC's Assistant

Director of Clinical Services pursuant to *Ex Parte Young.*

91.     Plaintiff has exhausted her administrative remedies.

92.     Rick Raemisch and Michelle Nelson terminated Plaintiff's employment because of her

disability in violation of the ADA.

93.     Rick Raemisch and Michelle Nelson have denied Plaintiff employment in violation of the

Americans with Disabilities Act on an ongoing and continuous basis since December 5, 2016.

94.     Plaintiff seeks reinstatement and other appropriate prospective relief for this violation.

### Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

a.      Reinstatement as authorized by the ADA and the Rehab Act;

b.      Nominal damages as authorized by the Rehab Act;

c.      Back pay, including loss of benefits and seniority, or front pay in lieu of

        reinstatement as authorized by the Rehab Act;

d.      Nonpecuniary and compensatory damages, including damages for emotional

        distress and consequential damages as authorized by the Rehab Act;

e.      Pre- and post-judgment interest at the highest rate allowed by law;

f.      Costs and reasonable attorney's fees; and

g.      All other legal or equitable relief to which Plaintiff is entitled.

### Jury Demand

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted this 8th day of November, 2018.

CORNISH & DELL'OLIO, P.C.


s/Ian D. Kalmanowitz
Ian D. Kalmanowitz, # 32379
Cornish & Dell'Olio, P.C.
431 N. Cascade Avenue, Ste. 1
Colorado Springs, CO 80903
TEL (719) 475-1204
FAX (719) 475-1264
ikalmanowitz@cornishanddellolio.com
Attorney for Plaintiff

Plaintiff's address:
676 S. McCay Drive
Pueblo West, CO 81007